REBECCA J. WINTHROP (CA BAR NO. 116386)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
rebecca.winthrop@nortonrosefulbright.com

Attorneys for Jackare Corp., Mark Rosenberg and
Andrea Rosenberg Romine

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>SCOTT ROSENBERG,<br><br>    Debtor and Debtor in Possession. | Case No. 1:22-BK-11305-MB<br><br>Chapter 11<br><br>**JACKARE CORP., MARK ROSENBERG AND ANDREA ROSENBERG ROMINE'S SUPPLEMENTAL OBJECTION TO DEBTOR'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM)**<br><br>Date: January 24, 2023<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>        Via ZoomGov Only |

TO DEBTOR AND DEBTOR IN POSSESSION SCOTT ROSENBERG AND TO HIS

COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Jackare Corp. ("Jackare"), Mark Rosenberg ("M.

Rosenberg") and Andrea Rosenberg Romine ("A. Rosenberg") (collectively, with Jackare, M.

Rosenberg and A. Rosenberg, the "Objectors") hereby supplement their *Reservation of Rights*, filed

on January 10, 2023 [Dkt. No. 37] (the "Reservation of Rights"), with this *Supplemental Objection*

to the *Notice of Motion and Motion for Relief from the Automatic Stay under 11 U.S.C. § 362*

DOCUMENT PREPARED
ON RECYCLED PAPER

1   *(Action in Nonbankruptcy Forum)* [Dkt. No. 27] (the "Lift Stay Motion") of Scott Rosenberg

2   ("Debtor" or "S. Rosenberg"), filed on January 3, 2023.[1]

3       The Objectors file this Supplemental Objection on the grounds that the Probate Action

4   should not proceed because the estate does not stand to benefit from its resolution.  Additionally, it

5   is unclear whether estate resources are improperly funding the prosecution of the Probate Action.

6   Should the Probate Action be allowed to proceed, then the Objectors respectfully request the Debtor

7   first disclose his relationship and fee arrangement with Probate Counsel.  Furthermore, any lifting

8   of the automatic stay should not be one-sided.  The Objectors respectfully submit that the stay

9   should also be lifted to permit M. Rosenberg, both individually and as Co-Trustee of the Jack and

10  Charlotte Rosenberg Family Trust, and A. Rosenberg to fully defend against the Debtor's actions,

11  including without limitation, to permit them to litigate or prosecute all matters that may relevant in

12  the Probate Action.

13  Dated:  January 18, 2023                    Respectfully submitted,

14                                              REBECCA J.  WINTHROP
                                                NORTON ROSE FULBRIGHT US LLP
15

16                                              By /s/ *Rebecca J.  Winthrop*
                                                   REBECCA J.  WINTHROP
17                                                 Attorneys for Jackare Corp., Mark Rosenberg
                                                   and Andrea Rosenberg Romine
18

19

20

21

22

23

---

24  [1] When the Debtor initially filed the Lift Stay Motion, he failed to comply with the Court's self-calendaring instructions.
25  On January 4, 2023, this Court published Docket Entry No. 28, advising all parties that the Lift Stay Motion had not
    been set for hearing, and instructed the Debtor to file a Supplemental Notice of Hearing.  When no Supplemental Notice
26  was filed, the Objectors filed the Reservation of Rights in an abundance of caution to preserve their rights in the event
    that the Debtor did elect to move forward with the Lift Stay Motion.  The Debtor, however, failed to take any action
27  until January 12, 2023, two days after the original deadline for filing responsive pleadings, when he filed the required
    *Supplemental Notice of Hearing*, attached as an exhibit to a *Notice of Errate (sic) Re:  Supplemental Notice of Hearing
28  To Be Held Remotely Using ZoomGov Audio and Video* [Dkt. No. 40].  On January 13, 2023, this Court filed Docket
    Entry No. 31, giving notice that the Lift Stay Motion would be heard on January 24, 2023.  The Objectors filed this
    Supplemental Opposition as soon as possible thereafter.

# I.

## BACKGROUND

The Lift Stay Motion seeks to resume ongoing litigation borne out of several family trusts. In regard to those trusts, M. Rosenberg serves as (i) Co-Trustee of the Jack and Charlotte Rosenberg Family Trust and its subtrusts, Trust A and Trust B (collectively, the "J&CRFT"), and (ii) Trustee of the Scott Rosenberg Irrevocable Trust.  The Debtor's and the Objectors' parents served as co-trustees of the J&CRFT until their father's death on May 30, 1993.  Upon their father's death, M. Rosenberg and his mother, Charlotte Rosenberg ("C. Rosenberg"), agreed to act and accepted the co-trusteeship of the J&CRFT.  The sole current beneficiary of the J&CRFT is C. Rosenberg, while she is living.  The Debtor, M. Rosenberg and A. Rosenberg, along with other relatives, are at most contingent beneficiaries of the J&CRFT.

### A.    The Probate Action

The Debtor commenced the pending J&CRFT proceedings (Los Angeles Superior Court Case No. 18STPB06444) on July 12, 2018 ("Probate Action").  According to the Debtor, the Probate Action "will create value for the bankruptcy estate to pay allowed claims."[2]  Further, the content of an eventual plan, according to the Debtor, "will depend on the outcome of the [Probate Action] . . . ."[3]  However, a review of the Probate Action casts serious doubt upon whether the bankruptcy estate stands to gain anything from the Probate Action.

Within the Probate Action, the various disputes relate solely to the historical and current administration of the J&CRFT, including:  (i) S. Rosenberg's contention that he is or should be a co-trustee of the J&CRFT, and M. Rosenberg's and A. Rosenberg's opposition thereto; (ii) S. Rosenberg's objections to the *Petition for Approval of Amended and Supplemental First Account Current and Report of Co-Trustee Mark Rosenberg*; (iii) S. Rosenberg's efforts to suspend and/or remove M. Rosenberg as J&CRFT Co-Trustee; (iv) various disputes regarding particular transactions involving J&CRFT assets; (v) various disputes regarding the conduct of C. Rosenberg and M. Rosenberg as J&CRFT Co-Trustees during the administration of the J&CRFT; and (vi)

---

[2] *Status Report Complying with Order Setting Scheduling and Case Management Conference* ("Status Report"), Dkt. No. 36, p. 7.

[3] Status Report, p. 5.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    disputes regarding payment of legal expenses and trustee's fees in connection with the J&CRFT.

2    Throughout the Probate Action, the Debtor has been represented by Terence Nunan of

3    Parker Milliken Clark O'Hara & Samuelian, APC ("Probate Counsel").  However, the Debtor has

4    made no effort to employ Mr. Nunan as special counsel or otherwise make disclosure of his

5    compensation arrangements in this bankruptcy case.

6    **B.    The Judgments And The Charging Order**

7    Separate and prior to the Probate Action, the Debtor is an adjudicated judgment debtor,

8    owing material amounts to Jackare and the J&CRFT (among others) evidenced by the following

9    properly recorded judgment liens:  (1) *Jackare Corp. v. Scott Mitchell Rosenberg*  (SC117495)

10    (judgment obtained against S. Rosenberg in the amount of $735,498.00 and thereafter renewed in

11    the amount of $1,135,794.22) ("Jackare Judgment"); (2) *The Jack  Rosenberg Family Trust v. Scott*

12    *Mitchell  Rosenberg* (SC117496) (judgment obtained against S. Rosenberg in the amount of

13    $152,683.06 and thereafter renewed in the amount of $233,802.95); (3) *Trust A Jack and Charlotte*

14    *R v. Scott Mitchell Rosenberg* (SC117499) (judgment obtained against S. Rosenberg in the amount

15    of $66,585.94 and thereafter renewed in the amount of $107,034.80); and (4) *Trust B Jack and*

16    *Charlotte R v. Scott Mitchell Rosenberg* (SC117500) (judgment obtained against S. Rosenberg in

17    the amount of $31,792.49 and thereafter renewed in the amount of $50,305.59) (collectively, the

18    "Judgments").[4]

19    Each of those Judgments has been properly recorded with the California Secretary of State,

20    thereby rendering each Judgment a secured claim against the estate.[5]  Moreover, in 2018, Jackare

21    moved for entry of a charging order—charging the Debtor's membership interests in Walnut Square

22    Apts, LLC (13.66%); Camino Palmero Apts LLC (13.5%); and 8110 Redlands Apts LLC

23    _____

24    [4] *See Notice of Renewal of Judgement*, *Jackare Corp. v. Scott Mitchell Rosenberg* (SC117495), Los Angeles County Superior Court (August 28, 2018), and attachments thereto; *Notice of Renewal of Judgement*, *Jack Rosenberg Family Trust v. Scott Mitchell Rosenberg* (SC117496), Los Angeles County Superior Court (August 28, 2018) and attachments thereto; *Notice of Renewal of Judgement*, *Trust A Jack and Charlotte R. v. Scott Mitchell Rosenberg* (SC117499), Los Angeles County Superior Court (August 20, 2019), and attachments thereto; *Notice of Renewal of Judgement*, *Trust B Jack and Charlotte R. v. Scott Mitchell Rosenberg* (SC117500), Los Angeles County Superior Court (August 28, 2018), and attachments thereto, all of which are attached as Exhibit A to the *Request for Judicial Notice in Support of Jackare Corp., Mark Rosenberg and Andrea Rosenberg Romine's Motion for Order Sustaining Objections to Debtor Scott Rosenberg's Claimed Exemptions*, filed on January 6, 2023 [Dkt. No. 32] (the "Request for Notice").  M. Rosenberg is also a Director of Jackare.

25    [5] *See* Request for Notice, Exhibit A.

26    

27    

28

1  (10.3125%) (collectively, the "LLCs").[6]  Over the Debtor's objection, on October 30, 2018, Jackare

2  was awarded a charging order ("Charging Order")—charging the Debtor's interest in the LLCs

3  with repayment of the Jackare Judgment.[7]  The stream of income generated by the Debtor's interest

4  in each of the LLCs is therefore subject to Jackare's judgment lien, and constitutes Jackare's cash

5  collateral.

6         Finally, on July 22, 2022, the Los Angeles County Superior Court entered an order directing

7  the foreclosure of the transferrable interests held by the Debtor in the LLCs, and ordering a

8  foreclosure sale of those interests to occur by auction on September 30, 2022.[8]  After additional

9  litigation, the foreclosure sale was continued until November 10, 2022.[9]

10        **C.    The Bankruptcy Case**

11        In response to the pending foreclosure, the Debtor filed the Bankruptcy Case on November

12  9, 2022, one day before the foreclosure sale.  As the Debtor admits in his Status Report, the catalyst

13  of the Bankruptcy Case is to prevent the foreclosure of the LLC interests and address issues

14  presented by the Charging Order.[10]  The Bankruptcy Case must also address the other judgments,

15  and several unsecured debts unrelated to the Probate Action.

16        Since filing the Bankruptcy Case, however, the Debtor has failed to identify a viable path

17  forward.  For instance, in the Status Report, the Debtor fails to describe even the structure of a

18  potential plan.  Instead, the Debtor only states that it is "possible" a plan may (i) seek to sell certain

19  assets as a resolution to the Probate Action; (ii) utilize an earn-out plan; or (iii) wait until the Debtor

20

21

22  [6] M. Rosenberg is the managing member of each of these LLCs.

23  [7] *See Order Granting Motion to Charge Member's Interest in Limited Liability Companies,* attached as Exhibit B to the Request for Notice.

24  [8] *See Order Granting Motion for Foreclosure of the Defendant's Interests in Limited Liability Companies,* filed as an

25  exhibit to the *Notice of Ruling on Motion for Foreclosure* on July 25, 2022, attached as Exhibit E to the Request for Notice.

26  [9] *See Ex Parte Order to Continue Date of Foreclosure Sale,* filed on September 28, 2022, attached as Exhibit F to the Request for Notice.

27  [10] *See Status Report Complying with Order Setting Scheduling and Case Management Conference*, filed on January 10, 2023 [Dkt. No. 36] (the "Status Report"), p. 5 ("The Debtor's most significant liability, and the catalyst to filing

28  this case, was the foreclosure sale of the Debtor's interests in his LLC's that were secured UCCs and a charging order lien. The case was filed on the eve of the foreclosure sale.").

1  receives inheritance upon the eventual passing of his mother, C. Rosenberg.[11]  This inability to

2  identify a path forward leaves estate creditors and the Court to guess whether *any* possibility of

3  reorganization exists, or whether the Bankruptcy Case exists merely to frustrate creditors' efforts

4  to enforce their rights.  *See In re Mense*, 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) (*quoting Albany*

5  *Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984)

6  (courts have found a lack of good faith and ordered dismissal or conversion "when there is no

7  realistic possibility of an effective reorganization, and it is evident that the debtor seeks merely to

8  delay or frustrate the legitimate efforts of secured creditors to enforce their rights.").

9  Further, the Debtor's inconsistent statements extend beyond these empty suggestions of

10  paths forward and permeate the Bankruptcy Case, including that the Debtor has taken conflicting

11  positions regarding the nature of his retention of Probate Counsel.  In the Lift Stay Motion, for

12  example, the Debtor avers that Probate Counsel "is not to receive payment **directly** from the Debtor

13  or the estate," and omits any information regarding the payment arrangements that apparently have

14  been made to indirectly pay Probate Counsel.[12]  Conversely, little more than a week later, the

15  Debtor discloses in his Status Report that Probate Counsel's "engagement is subject to a

16  **contingency** in that they would be paid as part of any settlement between the [Probate Action]

17  parties."[13]

18  ## II.

19  ### CAUSE DOES NOT EXIST TO GRANT THE LIFT STAY MOTION

20  The Debtor has failed to demonstrate that cause exists to grant the Lift Stay Motion because

21  the Probate Litigation will render little if any potential benefit to the Debtor's estate.  Enabling the

22  Debtor to continue to expend estate resources runs contrary to the interests of creditors and should

23  not be permitted.  Alternatively, should the Court permit the Probate Action to move forward, this

24  Court should condition this allowance on review and approval of the Debtor's engagement with

---

[11] Status Report, p. 5–6.  Needless to say, any plan of reorganization that hinges on the passing of Ms. Charlotte Rosenberg (which may be several years in the future) is improper. *See e.g. In re Made In Detroit, Inc.*, 299 B.R. 170, 176–77 (Bankr. E.D. Mich. 2003) (plan based upon the receipt of a loan not yet secured was merely "visionary promises" that was not sufficiently concrete to be feasible.).

[12] Lift Stay Motion, p. 5 (emphasis added).

[13] Status Report, p. 10 (emphasis added).

Document Prepared
on Recycled Paper

Probate Counsel, all of which remains undisclosed, despite the Debtor's assertion that the Probate Action will "create value for the bankruptcy estate . . . ."[14] Finally, fairness dictates that if the Debtor is entitled to pursue the Probate Action against any of the Objectors, then the automatic stay should also be lifted to permit the Objectors to fully defend themselves against the Debtor's actions, including without limitation, to litigate or prosecute <u>all</u> matters that may relevant in the Probate Action.

**A.    Even If The Debtor Is Successful In Litigating The Probate Action, Any Benefit From The Litigation Will Be Realized By The Trust, Not The Debtor**

As explained in Section I(A) above, the claims at issue in the Probate Action all surround the administration of the J&CRFT.  Accordingly, even if the Debtor is successful in litigating the Probate Action (which the Objectors strongly dispute), any recoveries would be paid to the J&CRFT, not the Debtor.  The Debtor apparently agrees—none of the claims alleged in the Lift Stay Motion are listed on the Debtor's Schedule A/B (¶ 33), nor is the Probate Action identified in Part 4, Section 9 of the Debtor's Statement of Financial Affairs.

It is important to realize that, under the operative terms of the J&CRFT, the sole beneficiary of the J&CRFT at this time is C. Rosenberg (the Debtor's mother), <u>not</u> the Debtor.  Attached as <u>Exhibit 1</u> to the *Declaration of Rebecca J. Winthrop in Support of Jackare Corp., Mark Rosenberg and Andrea Rosenberg Romine's Supplemental Objection to Debtor's Notice of Motion and Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Action in Nonbankruptcy Forum) and Exhibit in Support Thereof* filed concurrently herewith (the "<u>Winthrop Decl.</u>") is a copy of the Trust Agreement for the J&CRFT (the "<u>Trust Agreement</u>").  For Trust A, the Trust Agreement provides that C. Rosenberg is entitled to all net income and as much principal as she needs, including the right to withdraw the entire corpus of the Trust.  *See* Trust Agreement, Art. V, ¶¶ 5.1, 5.2, 5.3.  For Trust B, C. Rosenberg is entitled to all net income and as much principal as is reasonably required for her health, maintenance and support.  *See* Trust Agreement, Art. VI, ¶¶ 6.4, 6.5.  Thus, while the Debtor has a theoretical future interest in the J&CRFT, it is, at most, a contingent beneficial interest.  Moreover, the Debtor is not the only contingent beneficiary of the J&CRFT.  At this time,

---

[14] Status Report, p. 7.

Document Prepared
on Recycled Paper

M. Rosenberg, A. Rosenberg and other relatives are also contingent beneficiaries, and would share in any distribution.

Continued litigation of the Probate Action could also partially dissipate the J&CRFT. As a trustee of the J&CRFT, M. Rosenberg generally has the power to expend trust funds to pay his counsel. *See* Trust Agreement, Art. XI, ¶ 11.1(A)(6) and (7). One fee petition is already pending by M. Rosenberg, seeking authority to pay his counsel. Depending on the outcome of the Probate Action, once it is fully concluded, both the terms of the Trust Agreement, and California trust law in general, allows M. Rosenberg, as Co-Trustee, to seek an order that the rest of his fees and expenses should be borne by the J&CRFT. *Id.*, *see also* Cal. Probate Code §§ 16243, 16247.

Moreover, the Debtor's actions in continuing the Probate Action could expose the estate to a potential administrative claim if the Probate Action is permitted to move forward. The primary dispute that is pending for trial at this time relates to an accounting provided by M. Rosenberg in his capacity as Co-Trustee of the J&CRFT (to which the Debtor has objected). If the Probate Court determines that the Debtor's objections were without reasonable cause and in bad faith, the Probate Court can order that all of the Co-Trustee's expenses, including attorneys' fees, incurred in defending the accounting be shifted to the Debtor as a <u>personal</u> liability. *See* Cal. Probate Code § 17211(a).

**B.** **Granting the Lift Stay Motion Will Not Resolve Any Issues With Respect to the Charging Order or the Other Judgments**

Prosecuting the Probate Action will not resolve any disputes over the Charging Order or the other Judgments. All have been final for years. As explained in Section I(A) above, the Jackare Judgment and each of the other Judgments were properly recorded with the California Secretary of State. The Charging Order was successfully obtained for the Jackare Judgment and encumbers the payment stream generated by <u>all</u> of the Debtor's LLC interests, thereby rendering that stream of payments Jackare's cash collateral. Continuing the Probate Action will not change those facts or the legal effect that all of those secured claims have on the Debtor's ability to successfully reorganize.

DOCUMENT PREPARED
ON RECYCLED PAPER

**C.    The Debtor's Fee Arrangement With Probate Counsel Must Be Disclosed**

Even if this Court elects to permit the Probate Action to move forward, this Court should not lift the automatic stay unless and until the Court has reviewed and approved the Debtor's engagement with Probate Counsel.  11 U.S.C. § 329(a) requires the filing of a statement by *any attorney* representing a debtor—"whether or not such attorney applies for compensation under this title"—disclosing to the court the amount of compensation paid or promised to be paid.[15]  11 U.S.C. § 329(a); *In re BOH! Ristorante, Inc.*, 99 B.R. 971, 972 (BAP 9th Cir. 1989).  Further, 11 U.S.C. § 329(b) empowers the bankruptcy court to review these disclosures and to cancel any such agreement deemed unreasonable. 11 U.S.C. § 329(b); *In re Rheuban*, 121 B.R. 368, 385 (Bankr. C.D. Cal. 1990).  This requirement applies with equal weight to contingency fee agreements.  *See e.g. In re Yermakov*, 718 F.2d 1465 (9th Cir. 1983) (reviewing the reasonableness of attorney's fees under a contingency fee agreement); *see also In re Smith*, 637 B.R. 758, 775–76 (Bankr. S.D. Ga. 2022) (contingency fees ordered to be disgorged where contingency fee agreement was not disclosed under 11 U.S.C. § 329).  Given that the Debtor has now disclosed in the Status Report that Probate Counsel's fees will be paid pursuant to a "contingency" on any settlement reached, Probate Counsel must make proper disclosure of any payment arrangements and obtain Court approval of same.

Moreover, even if compensation is to come from some source other than the estate, employment of an attorney by the debtor-in-possession for services in connection with the bankruptcy case must still be disclosed to the bankruptcy court.  *In re Perrine*, 369 B.R. 571, 579 (Bankr. C.D. Cal. 2007) (citing *Consumer Seven Corp. v. United States Trustee (In re Fraga)*, 210 B.R. 812, 822 (9th Cir. BAP 1997) (The disclosure requirements of § 329(a) apply "whether or not the attorney ever applies for compensation . . . ."); *see also In re Hunanyan,* 631 B.R. 904, 911 (Bankr. C.D. Cal. 2021) (any professional working on behalf of the estate must receive court approval at some time even where the estate itself is not compensating the professional).  According

---

[15] "Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."  11 U.S.C. § 329(a).

Document Prepared
on Recycled Paper

to the panel in *In re BOH! Restaurante, Inc.*, fees paid to the debtor's counsel may be reviewed by the bankruptcy court regardless of their source because "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." *In re BOH! Ristorante, Inc*., 99 B.R. at 972 (quoting S.Rep. No. 95–989, 95th Cong. 2d Sess. 39 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5825).

This disclosure requirement is implemented by Federal Rule of Bankruptcy Procedure 2016(b), which requires that "[e]very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329. . . ." Fed. R. Bankr. P. 2016(b).  These required disclosures are "mandatory, not permissive," and should detail the precise nature of the fee arrangement. *In re Perrine*, 369 B.R. at 579; *In re J.T. Thompson, USA*, No. 2:12-BK-26473-PC, 2012 WL 4461650, at *6 (Bankr. C.D. Cal. Sept. 25, 2012) (An attorney who neglects to satisfy the disclosure requirements of § 329(a) and Rule 2016(b), whether willfully or inadvertently, forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received).

Accordingly, and based on all of the foregoing, if the Probate Action is allowed to move forward, and if, as the Debtor claims, the Probate Action will create value for the estate, then Probate Counsel must first disclose the nature of his relationship with the Debtor and provide a transparent disclosure of his fee arrangement with the Debtor.  This is particularly appropriate in this case, where the Debtor has already made inconsistent statements regarding those fee arrangements in two pleadings filed barely two weeks apart.  Unless and until such disclosures are made, and the terms of Probate Counsel's compensation are approved, this Court should not lift the automatic stay to permit the Debtor to proceed with the Probate Action.

**III.**

**CONCLUSION**

For the reasons set forth above, the Objectors request that the Court deny the Lift Stay Motion. Alternatively, should the court permit the Lift Stay Motion, the Objectors respectfully request this Court to (a) require Probate Counsel to first submit its required disclosures to the Court, detailing the nature of its fee agreement with the Debtor and the source of any payments, and obtain Court approval thereof, and (b) otherwise permit the automatic stay to be lifted to enable each of the Objectors to fully defend against the Debtor's actions, including without limitation, to litigate or prosecute all matters that may relevant in the Probate Action.

Dated:  January 18, 2023

REBECCA J.  WINTHROP
NORTON ROSE FULBRIGHT US LLP

By  /s/ Rebecca J.  Winthrop
REBECCA J.  WINTHROP
Attorneys for Creditors Jackare Corp., Mark Rosenberg and Andrea Rosenberg Romine

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
555 South Flower Street, Forty First Floor, Los Angeles, CA  90071

A true and correct copy of the foregoing document entitled (*specify*):  JACKCARE CORP., MARK ROSENBERG AND ANDREA ROSENBERG ROMINE'S SUPPLEMENTAL OBJECTION TO DEBTOR'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM)
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/10/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

  SEE ATTACHED LIST

  ☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 01/10/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Scott Rosenberg
17060 Tennyson Pl., Granada Hills, CA 91344

  ☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 01/10/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

  Via FedEx
  Hon. Martin R. Barash
  United States Bankruptcy Court, Central District of California
  12041 Burbank Boulevard, Ctrm 303
  Woodland Hills, CA  91367

  ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 01/18/23 | Diana Cardenas | *Diana Cardenas* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

### Attached List

- **Michael Jay Berger**  michael.berger@bankruptcypower.com,
  yathida.nipha@bankruptcypower.com; michael.berger@ecf.inforuptcy.com

- **Russell Clementson**  russell.clementson@usdoj.gov

- **Arvind Nath Rawal**  arawal@aisinfo.com

- **Korinny Sanchez**     askbk@resurgent.com

- **Richard L. Sturdevant**       rich@bwlawcenter.com

- **United States Trustee (SV)**  ustpregion16.wh.ecf@usdoj.gov

- **Andy C Warshaw**      awarshaw@bwlawcenter.com,
  Warshaw.AndyB110606@notify.bestcase.com